Hello, we see you. Hello, may I please report? I would like to reserve three minutes to rebuttal. The goal is Barnes gets the vessel, the permit, and the LLC. That's what we're looking for. So there was Barnes 1, the vessel was not contained for support. There's Barnes 2, automatic stage is not applied to capability cases. And this is Barnes 3. It took the last eight and a half years to get the state permit to secure. Today is 3,000... Counsel, is there any way you could get closer to your microphone? It's very difficult to hear you. Uh... I don't know. Okay. I don't... I... Just go ahead. We'll work with it. Okay. I don't know if there's a background... Go ahead. Go ahead. Today is 3,136 days since the vessel exploded. Okay. Somehow the focus of this meeting this Thursday went over on the activity stated, you know, anger provoked by unfair treatment. The three of the defendants came in for that. I've been constantly going back to it. The outcome depends on the denier of the maintenance and security. We need an opinion that focuses on entitlement to prompt payment. Governor versus Kelly, I think applies here, maintenance and security to the private welfare system is forced by the federal court. Emory Sea Reservoir Marine Services is a case that... 360 degrees is not applied to maintenance and security because it's a continuing, arising, continuously arising problem to pay living allowance. It's a lot like... It's a lot like animals. Maintenance and security comes from the individual from whom the obligation rightly belongs. As a remedy, maintenance and security... Can you hear me? We are having a hard time hearing you, but I think when we focus, we can make it out. Can I ask a question? I'm having a hard time understanding why you're challenging the judgment. Your client received upwards of more than a $500,000 judgment against the defendants here, against Sea Hawaii Rafting and the Tahani. Why are you challenging that? I don't understand why you're challenging that. You're basically saying the district court erred in awarding your client $600,000 or $500,000 plus. What's your basis for that and why? This is against the... This is a show of a corporation that has nothing and it's a lack of maintenance and security that is worth $2 million. The question is Henry. Chris Henry. And if it can't go out, I'm challenging the judge. You want to go against him individually, right? That's right. Otherwise, the whole thing... How does that help you to get rid of these other... You're just saying these judgments are worthless. You think that if you get these judgments vacated, that you requested, then you would then be able to go after Henry individually. No, I didn't ask to vacate the judgment. I asked to include Henry in the... I'm going to try to move this closer. I feel like it's better here. All right. Is that any better? Keep going. Keep going. All right, so I'm not asking to vacate the judgment. I'm asking to include that Henry was a defendant at that time. And that the judgment should apply against... How could we do that? He wasn't a defendant at the trial. There's not a judgment entered against him. I can understand an argument that says that issue should be remanded to the district court, although my impression had been that issue is still before the district court. What is it you're asking us to do? To include Henry in the judgment. We can't do that. If there's no judgment from the district court that runs to him, I don't understand any theory of law by which we can say, okay, this judgment that doesn't run against him now runs against him. You can argue that perhaps the district court shouldn't have denied a claim against him, but I haven't seen that singled out, although I confess there are so many different appeals and briefs I may have missed it. But what is it that the district court denied that you think that we should send back and have them do it again? The problem lies in the bankruptcy court's discharging Henry. That if we pierce the veil, then it should apply to Henry, but piercing the veil exposes me to the sanctions of the discharge. Well, okay, so let me stop you there first. That suggests that you don't have an objection to the judgment that's been entered by the district court against the company and the vote. So now we're just down to the question of, is it just the discharge of Henry by the bankruptcy court that we should be considering now? I believe so. And also, how come this remedy doesn't work anymore? How come maintenance and cure doesn't work anymore? Well, it does work. It's just that the maintenance and cure, I mean, you've got a judgment. You are in the unfortunate position. You're not the only one of having a judgment against individuals who apparently, in a corporation, they can't pay it. But, I mean, maintenance and cure works. That doesn't guarantee that you can get the funds wherever you can get them. Maintenance and cure says you can get it from the employer or the shipowner. And you've got a judgment against the employer and the shipowner. You're trying to extend that. And you may have it. I have no idea. You may have a claim that the corporate bail was pierced. But that's not before us. That's somewhere before the district court. Well, the purpose of the policy is to keep the seaman from becoming a public charge. Now, who supports the injured seaman, the taxpayer, when it's not paid? So by not getting a remedy, the cost shifting to the public taxpayer is a liability of the court. The Ninth Circuit ordered Judge Kaye to pay Barnes Maintenance and Cure $34 a day. Before we had this trial, he was already owed $70,000. And now he's owed six. How much is he owed now? Over $500,000, right? I understand that. You've got your remedy. The court's not unsympathetic to you, just like we're not unsympathetic to a whole host of plaintiffs who have judgments that they can't collect on. But that doesn't mean that we can just reach in and say anybody tangentially related has to pay you. Okay. Here's what you can do. And that's fine. That not only was the maintenance and cure exempt from the automatic stay, but that we could proceed against Henry. That the bankruptcy court had no right to stop Henry from being a defendant in this case. Well, the legal issue, as I understand it, raised in one of your appeals, objects to the discharge by the bankruptcy court of Henry individually. Yes. And so maybe that's the appeal we should focus on because that's what you'd like to achieve. But I didn't see anything and don't know of any law that supports the proposition that a judgment for maintenance and cure is not subject to discharge. So there are lots of debts that get discharged. They were valid debts, but they're discharged. And why isn't this one of them? Even assuming for a moment that you can get maintenance cure against somebody who wasn't actually the ship owner directly. But I hear your argument about piercing. Let's assume that that's not an issue for the moment. You still got the problem of why isn't the discharge effective to sweep that debt off? Because maintenance and cure is a continuously arising obligation. And that, you know, and that Judge Ferris made a determination that maintenance and cure gets discharged entirely. And he had no right to make that determination. It wasn't before him. He had not submitted to the jurisdiction. Well, you know, maintenance and cure is not a new remedy. Do you have any authority that supports the proposition that the continuing obligation to pay maintenance and cure is not subject to discharge, at least for dates after the date of discharge? That's the Henry C. Ray Marie. You know, if this was an alimony situation, the bankruptcy court by statute cannot discharge it. Is there a similar statute for maintenance and cure? There is not. But maintenance and cure is not really the subject of any statute. Well, no doubt. Is there a statute that says that maintenance and cure is not subject to discharge? No, sir. Well, then that distinguishes the alimony situation pretty clearly, doesn't it? If it takes a statute to say that alimony is not subject to discharge, that suggests that there's not such a statute for the debt that your client is trying to pursue. It is subject to discharge. Seems to me I'd be happy. I sympathize with Mr. Barnes. But I haven't heard an argument that tells us why that debt is not subject to discharge. That is the constitutional question about the separation between admiralty and bankruptcy. When the courts merge all of the proceedings, admiralty and bankruptcy, and 1331, somehow admiralty lost out. Can you clarify the procedural posture for me on this point? Because it seems to me that the only issue that is right for resolution on appeal is whether the discharge was properly granted at all. And the question whether the discharge operates against the liability of Henry for maintenance and cure seems to be unright. Am I wrong? Because Henry's liability isn't fully resolved. The Vail-Piercing issue isn't resolved. And no question has been raised about whether or not such a liability would be subject to an exemption from the discharge. So I'm confused as to what issue is in front of us. I believe the issue about the discharge of Henry is in front of you. Just a discharge in total and not the scope of the discharge. The scope of the discharge, I've only focused on the obligation of Henry as court guard. I mean, it was a single, you know, pierced to the Vail. I understand that the focus has been to try to shift this to post-petition context. You know, the judge locks in and says, well, post-petition, post-petition, when he misappropriated the funds, we're trying to put it back together. We don't need to be contextive. If we can get the permit tied to the LLP and the vessel, the barn, then you have the remedy that judge takes the aid. That was where we were going when we discovered that Henry had changed the rules on the permit. This is a whole new property idea. These permits are like taxi medallions. They're issued. The permit is, this can be solved by the permit is pertinent to the vessel. If it's pertinent to the vessel, then Barnes gets the vessel with the permit and the LLC, and we have a win. Barnes gets a remedy. Otherwise, Henry will be held accountable. Let's go back to that issue. The fact that it gives Barnes a remedy isn't a reason for saying the district court was wrong in its determination that it does not run with the vessel. So what was wrong with that determination? It was based upon Wyckoff, who's a lawyer for GoBarn. It wasn't based upon GoBarn. Wyckoff says that it's not up to him. He doesn't make up. He knows about these things, but he doesn't decide. GoBarn decides. Judge came, relied on Wyckoff, who he had us go by, who testified that it's not up to him. It's up to GoBarn, his client, and that the... But he stated the state's position, his client's position. I mean, Mr. Wyckoff is a supervising deputy attorney general. He's responsible for that department of the state, and he testified that the state views this as something that is not attached to a vessel, is not something that automatically transfers with a vessel. It's issued to a particular licensee, in this case the company. And that seems, his testimony seems to support the conclusion that the district court reached. So what's wrong with the conclusion? What's wrong with the conclusion is that the permit has to be returned to see Hawaii Rafting, which has all of... I thought it had been. No, no, no, no. Henry went to GoBarn. Wait, back up. The district court ordered that the permit be returned to see Hawaii Rafting, correct? Yes, and Henry did the opposite. He further protected the transfer to his new post-banker team. That may be, but that's an issue before the district court, it seems to me. The district court has ordered a remedy for it to be transferred back to see Hawaii Rafting. If that has not been done, then that's something that the district court needs to resolve. Well, we think that, you know, we tried to... Yes, but the court has given up on it because these things are... I don't think the district court's given up. I mean, to the contrary, the district court wrote a three-page letter to this court last, you know, when this court tried to stay proceedings in the district court. He seemed very active in the case. He seems to have a vested interest in resolving this. Okay, and it's all about Henry's post-bankruptcy behavior. It's not about, you know, and the sanctions and all this stuff. We, you know, Judge Paye can order it to be transferred back. Henry refused to do it because it's his property rights, and he had a right to do it, and that's what we want to get Judge Paye to do that. So how does that lead to anything that we can do? It seems to me if you want to seek contempt sanctions or anything else, that's for the district court. I don't see what's on appeal to us that helps your cause. The permit is to order Judge Paye to transfer the permit back, whether Henry wants to do it or not. But Judge Paye already ordered the transfer of the permit back. What is there for us to do? Enforce it. Well, okay. Well, thank you. You've got a little bit of time for a rebuttal. Mr. Washkowitz, do you want to help us understand this case a little better? Sure, members of the court. Thank you. Can you hear me okay? Yep. Okay. Yeah, I'm just going to go over. There's six different appeal numbers. I'm just going to go over and summarize them, each one, real quick so you understand what's going on. Well, I think we have a sense of that. Okay. Ultimately, when you get to it, you don't represent Henry, right? I do. I do. I represent Chris Henry and AOE in these appeals. I see. Okay. Yes. But there's more than just issues related to Chris Henry and AOE in these appeals, right? In some of them, for example, the 18-17154, that's Barnes appeal from the maintenance and cure trial. The judgment in that case was against SHR and the vessel, not my clients. But my client is a principal of SHR, so we filed a brief just to respond to what Barnes filed. Okay. Can you answer why? I understand this issue may not be before us, but it may. In fact, I think I'm certain that it's not. But is it true that Henry has not transferred the title? It's the title of the TANI from AOE back to SHR? The issue is, and this is one of the issues we appealed. The one order that we appealed was when Judge Kaye ordered Chris Henry to transfer the permit, the commercial use permit, from AOE, his company, back to SHR. I think Judge Kaye's thinking was it would help with Barnes' collection of his maintenance and cure judgment if he could collect on the vessel and the permit. So Judge Kaye entered an order saying that Henry should transfer the permit back to SHR. We appealed that because we thought the language of his order was not entirely clear as to whether he was saying we should go back to DOBOR, the issuing agency, and see what they say about it. But what ended up happening is we interpreted that order as not requiring it to be transferred back to SHR. AOE currently has the permit. The court actually issued sanctions against Mr. Henry and AOE based on that. We appealed. One of these appeals is our appeal of the court's decision ordering the transfer of the permit back to SHR. And the basis of that appeal is that we had no notice that this was even something on the table. How do we have jurisdiction over that issue and that appeal? That is the appeal number 19-16484. So Judge Kaye ordered that the permit be transferred. What statute gives us jurisdiction to interfere in that issue? We appealed it. We filed a motion for reconsideration of the judge's order. That motion was denied, and we appealed it as an interlocutory order in a maritime case. How does that fall within the rights and liabilities determination? That's construed narrowly. It normally means liability on a maritime rule. Ownership of a particular asset isn't necessarily within the scope of that. I saw it, Your Honor, as a due process issue because we had a hearing on a totally different issue. Lots of due process issues arise, and people have to wait until final judgment. Why do you get to come up here in the middle of this and contest this? The reason, Your Honor, is because this order was that the permit be transferred back to SHR. Once that transfer happened, it was irreversible. Those permits are hard to come by. If it's wrong on appeal, the court could review it in order that it be transferred back. Or compensation would be given. Yeah, that might be true. But you have a remedy at the end of the day for this. It was just the fact that it was something that was unsolicited and to us seemed something we didn't have notice for and that would cause permanent harm to AOE as a holder of the permit. I thought it fell under the court's power to hear this appeal as an interlocutory order in a maritime case. But, I mean, look, AOE, this issue may not be before us, but it seems like a pretty disingenuous argument to suggest that this was a good faith transfer. SHR, which you know is going into bankruptcy, transfers it to AOE with the same shareholder simply to avoid a judgment from Barnes against SHR. Well, I think the problem is there was never any inquiry as to what the circumstances were regarding that transfer, what Mr. Henry's intent was. Did you know that you told the state agency that this was just a name change? There was when Mr. Weinhoff, who is the attorney for the DLNR, testified. He went through the files they had and there was a letter from Mr. Henry stating that it was a company name change from SHR to AOE. That's a false statement, isn't it? Well, he said... That's just a misleading and false statement. I mean, Mr. Weinhoff said, you know, it appears to be untrue, but the ultimate determination on that would be up to DOBOR as to whether there was any... Why don't you tell us whether it's untrue? Do you think it's a truthful statement? Honestly, I feel like Chris Henry wrote a letter to DOBOR... You're trying hard not to answer my question. Yes, it is. I think in his mind, he wasn't deceiving anybody. In his mind, he probably didn't realize the importance of distinguishing between a name change versus, oh, no, it's actually a new legal entity. I don't know if he... It was like a one-page form he filled out with DOBOR. I don't think he realized what significance that even had. Well, you understand the significance. What do you think? I mean, I think it's like what Mr. Weinhoff said. It should be up to DOBOR to hear from Mr. Henry and listen to what he has to say and decide, was there some bad intent here, intentional misrepresentation, or was it just a mistake? The point is, there was never any inquiry on that. Stop, stop, stop, stop, stop, stop, stop. Because the transfer came based on a statement which you seem to acknowledge was at least incomplete. So why is it the responsibility of the state to dig into the effect of your client's incomplete statement when on the face of it, the premise of the transfer approval in the first place wasn't accurate? You're saying your client's entitled to hold on to it and continue to use it despite the district court's order for months thereafter? Really? No, I mean, I'm saying the way we interpreted the district court's order was that it was something that DOBOR could decide whether or not... I don't recall reading the order as saying I'm going to let the state decide. I thought he said transfer it back. Can you point me to something that will disabuse me of my perception? There was definitely some language in the order that we thought was kind of vague and not... And you're appealing, objecting to the action which you say actually wasn't in the order because what you told us you're appealing is the order to transfer back, which you're now trying to tell me wasn't actually there, which goes back to the question my colleagues have raised. How could this possibly be an appealable issue at this stage? Well, after the fact, we realized what the court actually meant because my client got sanctioned. So it became clear that the court meant that we were not to go to DOBOR and let DOBOR decide. It was just a straight transfer. Has your client responded to the order and complied with it? The sanctions order, yes. It's an ongoing thing. Has your client, now that you understand that the order of the district court was to transfer it back, has your client, with that clarity, actually done what it was directed to do? No, because the court later, in a subsequent order, said that we don't have to do it. So in a subsequent order, the court said, you know, after all this, it's not in anybody's interest for the permit to be transferred from AOE to SHR. So AOE can retain the permit. Is that in the record? Can you give me a cite for that? I wanted to confirm that. Okay. Yes. Let me look at my brief. Yes. DCF 657. That was the docket number in the district court case. Let me see if it's in the excerpts of record real quick. Let's see. 657. The reality at this point is that probably even Mr. Barnes is better off with some income continuing to come in through the operation that is allowed to proceed because of the permit. So I'm not sure that's really a contested issue at this point. Do you have an understanding? I think the problem isn't the income that's coming in is going to AOE, and there's no judgment against AOE. There's only a judgment against SHR. But that's the whole problem with the transfer, with all due respect, Counsel, to your artful answers here. It's actually preposterous to believe that Mr. Henry didn't understand what he was doing and why he was doing it. Well, part of it, Your Honor, you have to look at it in this context. He was trying to keep the boat going, keep cash flow going, so he could continue. Okay, where does the cash go, though? It doesn't go to Mr. Barnes. It goes to him. Well, some has gone to Mr. Barnes in the form of sanctions. And to answer your prior question, at our excerpt of record number 7, this was AOE's excerpts of record number 7. That's the ECF number 657, where Judge Kaye said, all right, it makes more sense for the permit to actually stay with AOE. Okay, so that actually supports the idea, not only is the issue not appealable, because it wasn't a final judgment, because the district court changed the order while it was on appeal, but the issue has now moved, apparently. Except for the fact that my client was sanctioned. You think that if we reversed it, that then that would exculpate your client on the sanctions? Yeah, and I know there would be some argument as to the fact that sanctions don't get exculpated just because the order reversed. Look, here's the question, and I know you're not the right party to ask, but how is Mr. Barnes going to get money? He's entitled to $500,000, whatever the amount is, and with all due respect, it appears that Henry is doing everything in his power not to pay Barnes money that is rightfully owed to him. Now, he may be able to do that legally. I mean, that's for the district court to determine. I don't think that issue is before us right now. But this issue has been raised before us, and if Henry continues down this road, that's going to be noted for a prior appeal. Someday that is going to get up to us. And if we have to retain jurisdiction, not that we want this case, but I can guarantee you that Mr. Henry is not going to get away with these shenanigans. So let's just put a stop to this ridiculousness and figure out a way to get this money in the hands of Mr. Barnes to where it rightfully goes. How is that going to happen? The problem is, Your Honor, that we have Mr. Henry personally who has no access to the district court. I understand the problem, and I understand that he might be legally, at this point, able to get away with this. But it's not going to stand in the long run. It can't. I mean, it's one of those cases, Your Honor, where there's a judgment and there's only so much in assets. There's a boat and a permit. Fair enough. But the money related to the permit should be getting to Barnes in some way. No, no, no, no, no, no, no, no, no, no, no. He should have an entitlement to the money that's coming from that permit. Well, I mean, that is part of what we discussed in the sanctions order below with Judge Kaye. I mean, that was the basis of the sanctions was how much is a permit worth, and that's been paid or is being paid. Well, it sounds like the permit's worth more in the long run. I mean, the permit's worth $35,000, but it sounds like over the long haul you could actually get more than that by keeping the permit. Maybe yes, maybe no. There's a lot of questions there based on current state of operations. But the long and short of it is that, you know, the fact that the court ordered this without any notice to us that this was even an issue, that was the basis of our appeal on that issue. But that's now been reversed anyway, effectively. The court, in its order at 6-5, at our excerpt of record number 7, did say that it was kind of not going to enforce that part of its prior order right now. I don't know if it reversed it, but... When you say excerpt of record number 7, what case number, is that volume 7 of a particular case number? We filed our own excerpts of record in this appeal. Which one? 17-16484? Yeah, 19-16484. And it was our Exhibit 7 on our excerpts of record. Okay. And in there, at some point, Judge Cade notes, you know, it doesn't even make sense to transfer the permit back to SHR because that would put the permit at risk. Which is kind of what we were saying all along. Yeah, with all due respect, you were saying that for different reasons. So, I mean, it's a little bit disingenuous, to be clear. But I want to ask a question about the Tahani. There's the Tahani, and then there's the permit. So, the Tahani, at one point, was also transferred to AOE. Is that correct? The Bankruptcy Court authorized the sale of the Tahani to AOE. That was later kind of invalidated. Right, right, right. So, currently, the title to the Tahani rests with SHR or not with SHR? With SHR. Okay. And Mr. Barnes has no access to those. I thought, Mr. It's not being used now, though, right? Isn't it under arrest? It's under arrest at a storage facility in Kona. And I believe that the District Court ordered that, you know, normally, he could sell the vessel and recoup the money from that. Barnes could. But I believe Judge Cade ordered that any sale of the vessel is stayed until these appeals are resolved. Okay. Well, we can handle that part of it. But once these appeals are resolved, then the sale of the Tahani will go forward? Presumably, yes. And who will get the proceed? The money will go to SHR, correct? Well, I think that would be part of Barnes executing his judgment against the vessel. He has a judgment against the vessel. But, I mean, initially, it would go to SHR or would it go into the Bankruptcy Court? I think it would. That's done. Yeah. I think it would not go to Bankruptcy. I believe Barnes has a judgment against the vessel in SHR. To execute that judgment, he sells the vessel and then the proceeds go to Barnes. Probably almost directly. Is that the case? I believe so. And it's not that much. Yeah. It's, what, $30,000 or $40,000? Something like that. Yeah. I forget what the last survey said. Can I get your commitment that there's not going to be another appeal where Henry is trying to get out of sending whatever proceeds come from the Ahani sale to Mr. Barnes? My client just wants this to go away. We're not the ones filing all the appeals. Well, but you're the one with access to the money. Okay. So, you're giving the commitment that that's going to end it. That money is going to go to Mr. Barnes and we're not going to get another interlocutory or even final judgment appeal about the sale of the car. You know, I have to talk to my client about that. I can't see why we would appeal that. That's pretty much the main asset besides the permit. And if the vessel is sold pursuant to the rules and everything is normal. Okay. What is the permit being used for now? How is it generating income? Is it being used on another vessel? I think it is being used on another vessel, perhaps. Okay. Although that's not part of any of the record that is before the court right now. No, I hear you. I hear you. We're just trying to front load. Yeah. We don't want enough. Trust me. Just like you want to get out of this. Trust me. This court does not want Barnes number five. But your client is in somewhat control over how some of that happens. And so, we expect that, you know, this will go back down. We'll get done with these appeals. And that your client will act consistent with the district court and not try and unwind with regard to this commercial permit. That does seem to be the only asset left. Although, I mean, we're not getting into tears in the corporate veil. Who knows? But is there an ability to actually work with that to try and help this go away? Yes. And my client has complied with all the court orders. There was that one issue with the permit where, in our view, it was a legitimate issue. He just told us that he hadn't and he'd been sanctioned. So, that's a little less than something we're going to take as gospel. But the message we're trying to convey to your client through you is sort of like enough already. Which brings me to the thing that you mentioned, which is I guess I need to find out what else is still pending. We heard, for example, the argument that the corporate veil of SHR should be pierced to reach your client personally. Is that issue still pending before the district court? Has it been resolved by the bankruptcy discharge? What lies ahead for that argument? In my view, that's not part of this appeal, even though it was raised. But at the district court, they filed a motion for summary judgment to pierce the corporate veil of Chris Henry for the maintenance and care judgment. And that was denied without prejudice. So, I guess it's still alive. So, I agree with your assessment that it's not properly before us on appeal. Although Barnes appears to be asking for that relief. But we don't have that issue teed up yet. The reason I'm going to this trouble is that I want to underscore what Judge Nelson has been saying. We anticipate there may still be fights ahead. Although the level of combat here for the stakes that you're fighting over makes me question the cost analysis. But in any event, anything that could be done to let the available resources be spent for beneficial use rather than continuing the battle would be much appreciated. And if we have to see these arguments again, I assure you, these judges will be very disappointed. Hopefully, after the Ninth Circuit appeals are resolved, maybe we'll be in a better posture to resolve the case. We've tried a bunch of times, and I would love to do it. Maybe not. Well, we'll do our job in due course, and then we hope that you'll follow through. Mr. Friedheim, do you have anything else? You need to understand that the permit requirement, you have to reapply every year. You have to show a certificate of inspection. You have to show a certificate of liability insurance, and you have to report gross receipts. That's why Judge Kaye said, well, don't transfer it back at this moment. But that permit is devalued. Honey is a dilapidated, inflatable vessel that's been sitting out of the water for years at Barnes' expense. The permit needs to be transferred back. How much is it costing Barnes to pay? I mean, with all due respect, Mr. Friedheim, this case could have been heard last year. And, you know, some of the appeals that have been filed have delayed this. So I'm sympathetic to Mr. Barnes, but some of this is a little bit self-inflicted. I understand there's frustration, but I think everybody's got to work a little bit smarter here to get to the end result. The end result should be the permit, the boat, and COI rafting that Barnes has claims against. They're not transferring the permit. They have nothing to do with the title of the boat. Well, that's not before us. You can fight that battle another day. If it comes back to us, we've made clear what our, you know, position is, how we view this case. And it's not likely to be very favorable to Mr. Hendon. So I think that needs to be taken into account in the future. But for now, that's not before us. What is before you is that the bankruptcy, I'm not allowed to advance the theory that Henry should owe any money because of the discharges, and Molitor, and Taggart, and all that stuff. And I, you know, so I'm at risk for advancing Henry's claim, for advancing Barnes's claim. Okay. Counsel, we have your argument. We get that this is a difficult case. We hope that smart lawyers and a smart district court judge will be able to resolve this case. We leave you with our best wishes that that will happen. And with that, the case is submitted. We're going to go ahead and take a short break, and then we'll come back for our closing.
judges: Clifton, Nelson, Collins